UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JERRY M. BURGIN, JR.,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security Administration,<br><br>Defendant. | NO. 2:13-cv-03103-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 18, and Defendant's Motion for Summary Judgment, ECF No. 23. The motions were heard without oral argument.

## I.  Jurisdiction

On February 1, 2010, Plaintiff filed disability insurance benefit ("DIB") and supplemental security income ("SSI") applications. Plaintiff alleged he is disabled, beginning July 31, 2007, due to chronic lower back pain that radiates into his extremities, including his fingers.

His applications were denied initially on April 14, 2010, and again denied on reconsideration on July 1, 2010. A timely request for a hearing was made. On October 13, 2011, Plaintiff appeared at a video hearing in Yakima, Washington before Administrative Law Judge ("ALJ") Gene Duncan.  Dr. James M. Haynes, medical expert ("ME"), and vocational expert ("VE") Trevor Duncan also

participated. Plaintiff was represented by attorney Chad Hatfield. James Tree represents Plaintiff at this Court.

The ALJ issued a decision on January 26, 2012, finding that Plaintiff was not disabled. Plaintiff requested review by the Appeals Council, which was denied. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. §405(h).

Plaintiff filed a timely appeal with the U.S. District Court for the Eastern District of Washington on September 30, 2013. The instant matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step One: Whether the claimant is engaged in substantial gainful activities. 20 C.F.R. § 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. § 416.972(a); *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 416.971. If he is not, the ALJ proceeds to step two.

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

Step Two: Whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 416.909. If the impairment is severe, the evaluation proceeds to the third step.

Step Three: Whether the claimant's impairment meets or equals one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

Step Four: Whether the impairment prevents the claimant from performing work he has performed in the past. 20 C.F.R. § 416.920(f).  If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step Five: Whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 416.920(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents his from engaging in his previous occupation. *Id*. At

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

### III. Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). But "[i]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### IV. Statement of Facts

The facts have been presented in the administrative transcript and the ALJ's decision. They will only be summarized here.

At the time of the hearing, Plaintiff was thirty-five years old and living with his girlfriend. He has one son from a previous marriage. Plaintiff has previous work experience but has not worked regularly since at least July 31, 2007. His

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

previous employment included inventory control, public utilities, landscaping, fast food retail and operating a forklift at a lumberyard.

Plaintiff suffered a back injury at work and underwent discectomy surgery in 1997. He was in a motor vehicle accident in 2005. He underwent x-rays and an MRI in 2007 which showed broad-based protrusion and focal protrusion at many locations and mild to moderate narrowing of the canal at many locations. Plaintiff testified to pain down both legs—though worse on the right side—at a level of seven out of ten and testified that his fingers frequently tingle and his arms fall asleep. In 2010, Plaintiff fell and broke a bone in his foot.

Plaintiff reports that he is only able to remain seated or standing for short periods of time before needing to change position. Plaintiff can only drive a vehicle or walk for short periods of time. He reports assisting with minor chores around the house such as feeding and watering animals. He relies on his girlfriend and mother for assistance with many tasks including laundry, cooking, washing dishes, and, on occasion, bathing. Plaintiff testified that he used to enjoy playing sports, hunting, fishing and horseback riding.

## V.  The ALJ's findings

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 31, 2007, the alleged onset date. (Tr. 24.)

At step two, the ALJ found Plaintiff has the following severe impairments: Post Discectomy Degenerative Joint Disease ("DJD") and Degenerative Disc Disease ("DDD") at the L5-S1 level; DJD at C2 & C4 Levels; Polysubstance Abuse by History; and Cannabis Use for Pain Relief. (Tr. 24.)

At step three, the ALJ found that Plaintiff's impairments or combination of impairments does not meet or medically equal Listing 1.04 (Disorders of the Spine). (Tr. 25.)

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b)[1] except "he could stand or walk four hours in an eight hour day; he would require a sit/stand option; he can perform simple and routine work; he can never climb ladders, ropes or scaffolds; he can never balance or crawl; he should avoid heights, hazards, machinery, and vibration; he could not perform intense twisting of his upper body; he should never be exposed to extreme heat or cold; he can frequently handle with his upper extremities; he should never operate a vehicle; he should not use food [sic] pedals; he should have no direct access to drugs; he can never push or pull medium to large objects; he could not work in a high stress environment; he could work at a low to average pace; he would be off task 4% of the work day; and he would be absent two hours a month for medical treatment." (Tr. 25.)

At step four, the ALJ found Plaintiff was not capable of performing any past relevant work. (Tr. 31.)

At step five, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 31.) The ALJ relied on the Medical-Vocational Guidelines and found that while the additional limitations of Plaintiff's condition do restrict his ability to perform many light work jobs, he would still be able to perform some such as Assembler, Cashier II, and Data Entry Clerk. (Tr. 32.) As a result, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since July 31, 2007.

---

[1] (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

## VI. Issues for Review

1. Did the ALJ commit reversible error by failing to take into account the opinions of the treating and examining physicians?

2. Did the ALJ commit reversible error by giving too much weight to a mistake made by VE Duncan or by selecting the position of data-entry clerk at Step Five?

3. Did the ALJ commit reversible error by posing a hypothetical that did not take into account the limitations of the claimant?

4. Did the ALJ commit reversible error by not finding the claimant credible despite the evidence supporting his claim of being unable to work?

5. Did the ALJ commit reversible error by rendering a decision without considering evidence from a neurologist?

## VII. Discussion

### 1. ALJ's weighing of evidence from treating and examining physicians

Plaintiff argues the ALJ committed reversible error for failing to take into account the opinions of several treating and examining physicians. Specifically, Plaintiff contends the ALJ errantly gave little-to-no weight to many of Plaintiff's medical records from treating and examining physicians that gave him a "sedentary" rating while giving ME Haynes and non-treating physician Dr. Norman Staley significant weight.

Generally speaking, three types of doctors provide medical evidence: treating doctors, examining doctors, and reviewing (non-examining) doctors. "By rule the Social Security Administration favors the opinion of a treating physician over non-treating physicians." 20 C.F.R. § 416.927[2]; *Orn v. Astrue*, 495 F.3d 625,

---

[2] 20 C.F.R. § 416.927(c)(2) states: Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

631 (9th Cir. 2007). If the opinion of a treating physician "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Orn*, 495 F.3d at 631. If a treating physician's opinion is not given "controlling weight" because it does not meet these requirements, the ALJ should consider (i) the length of the treatment relationship and the frequency of examination by the treating physician; and (ii) the nature and extent of the treatment relationship between the patient and the treating physician in determining the weight it will be given. *Id.* The ALJ is not required, however, to merely accept the opinion of a treating doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where contradicted, the ALJ may reject the opinion by setting out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ must, however, offer more than his conclusions and must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* On the other hand, where the treating doctor's opinion is uncontradicted, the ALJ can only reject it for clear and convincing reasons. *Id.*

Here, the ALJ assigned "little weight" to Dr. Thibert's opinion that Plaintiff could perform only sedentary work. Dr. Thibert examined Plaintiff on at least three occasions. Plaintiff first visited Dr. Thibert in January of 2007, prior to the alleged disability onset date, and Dr. Thibert gave Plaintiff a "light work" rating. In Plaintiff's subsequent visits in 2007, Dr. Thibert assigned a sedentary rating. Notably, Dr. Thibert's rating changed from light to sedentary as his records began to reflect Plaintiff's reported tingling in his fingers and hands, and instances of his

---

cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

arms falling asleep. The ALJ assigned little weight to Dr. Thibert's opinion because of the "lack of objective findings to support such a limitation [of sedentary] and the purpose of the evaluation." (Tr. 27.)

In January 2008, Plaintiff saw Dr. Donn Kruse who filled out an evaluation finding that Plaintiff's ability to stand, walk, lift, handle, and carry would be moderately or occasionally limited. Dr. Kruse assigned a residual functional capacity at a sedentary level. Again, the ALJ held little regard for the opinion because the evaluation was "for the purpose of helping the claimant to afford seeing a neurosurgeon." (Tr. 27.)

Plaintiff saw Dr. Tanvir Ahmad twice in 2009. During Plaintiff's first visit, Dr. Ahmad rated Plaintiff's RFC as "severely limited." At a later visit, in September, Dr. Ahmad rated Plaintiff at a sedentary level. The ALJ gave Dr. Ahmad's reports—at least with regard to Plaintiff's first visit—little weight because "in no way has the record ever substantiated that the claimant was unable to stand or walk" as a severely limited classification entails. (Tr. 27.)

In April 2010, the plaintiff saw Dr. Ryan Zehnder and reported constant back pain and occasional numbness. Dr. Zehnder did not assign an RFC level and the ALJ did not indicate what weight, if any, was given to Dr. Zehnder's report. (Tr. 28.)

The next month, Plaintiff was evaluated by Dr. Agnes Stogicza. Dr. Stogicza diagnosed with sacroiliac instability, sacroiliitis, ligament laxity, failed back surgery syndrome, whiplash injury, muscle spasm and nerve entrapment. Dr. Stogicza did not assign an RFC level and the ALJ did not indicate what weight, if any, was given to Dr. Stogicza's report. (Tr. 28.)

//
//
//
//

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

1 | The ALJ wrote that Dr. Norman Staley, after reviewing Plaintiff's medical record, opined:

> "the claimaint could perform light work; he could stand for six hours in an eight hour day; he could sit for six hours in an eight hour day; he could occasionally stoop, kneel, crawl, and climb ladders, ropes, and scaffolds; he could frequently balance, crouch, and climb ramps and stairs and he should avoid concentrated exposure to hazards such as machinery or heights."

The record, however, indicates that such statements were actually selected on a check-box form by Keith Perron, who acted as a Single Decisionmaker in reviewing Plaintiff's medical records and assigning him an RFC level of light work. Perron stated that an "[o]piniojn [sic] of sedentary is not fully supported by the objective evidence, labs and exams support this RFC." (Tr. 309.) Dr. Staley did affirm this RFC finding in July 2010, stating it "appear[ed] appropriate." (Tr. 343.) The ALJ gave "great weight" to Dr. Staley's opinion "due to his expertise, his familiarity with the Social Security Act regulations, and his ability to review the entire record before making his determination." (Tr. 29.) The ALJ did not mention Perron or assign his initial RFC determination any particular weight. Neither Perron nor Dr. Staley examined the plaintiff in person.

In June 2011, Lumor Chet, an Advanced Registered Nurse Practitioner, examined Plaintiff to complete a Washington State Department of Social and Health Services (DSHS) evaluation for the payment of an MRI on Plaintiff's neck and back. Chet assigned Plaintiff an RFC of sedentary. The ALJ asserted that Chet's assignment of an eighty degree flexion for extension of the back (out of ninety degrees) was "mostly complete range of motion" and was therefore "inconsistent with his finding that the claimant could only perform work at a sedentary level." (Tr. 29.) Because of this finding, the ALJ assigned Chet "little weight." (Tr. 29.) Chet's report described Plaintiff's range of motion as "limited flexion," and described him as in pain and "chronically ill-appearing." (Tr. 430.)

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

Next, the ALJ assigned "significant weight" to Dr. James Haynes opinion. (Tr. 29.) Dr. Haynes served as the medical expert at the hearing in front of the ALJ. Dr. Haynes reviewed Plaintiff's medical records but did not personally examine the Plaintiff. At the hearing, Dr. Haynes testified that Plaintiff could perform light duty work. Dr. Haynes also described any tingling or numbness in the arms and hands as a "loose end" that required an evaluation by a neurological specialist for further elucidation. (Tr. 52.)

After the hearing, Plaintiff was sent to Dr. Wing Chau for a consultative examination which occurred on December 15, 2011. Dr. Chau found Plaintiff to be "physically fit" and that he should "work full time at medial duty work with less emphasize [sic] on lifting and trunk movement." (Tr. 441.) The ALJ gave Dr. Chau's opinion "significant weight based on his expertise and his ability to examine the claimant before creating the RFC." (Tr. 30.)

In this case, the ALJ's weighing of treating physicians *vis-à-vis* reviewing doctors, and the ALJ's rejection of treating physician opinions, are not supported by substantial evidence. The ALJ rejected Plaintiff's examining physician medical reports for three primary reasons 1) the opinions conflicted with "the record" as established by non-examining doctors; 2) the purpose of the evaluations; and 3) the reports were made using "check-box or form" reports that contained little explanation of the bases for conclusions.

The ALJ rejects various physician findings because they conflict with the record, or more accurately, conflict with the RFC that the ALJ found. The ALJ failed, however, to recognize that these opinions that he rejected—the majority of medical reports in the record—are part and parcel of the record, and only conflict with the non-examining doctors' and Dr. Chau's opinions. The ALJ gave "great" or "significant" weight to the opinions of only three professionals: Dr. Staley, ME Haynes, and Dr. Chau. Of those three, only Dr. Chau examined Plaintiff. Indeed, the ALJ assigned great weight to Dr. Chau's opinion *because* of "his ability to

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

examine the claimant before creating his RFC" and his (unidentified) expertise. (Tr. 30.) Oddly, the ALJ justified giving little weight to only the DSHS examiners because they "usually do not have a treating relationship with the claimant" (Tr. 30.) but did not apply the same rationale to the non-treating doctor's opinions. While the lack of an extensive history of treatment between Plaintiff and the DSHS examiners may justify giving less weight to their opinions than to a treating physician, "it is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Lester*, 81 F.3d at 832 (emphasis in original). It appears that the ALJ decided to accept the opinions and testimony of the non-examining doctors—ME Haynes and Dr. Staley—and then rejected anything in the record that was contrary to the RFC as found by them. This constitutes an error of law. *Id*. at 830. Interestingly, the ALJ did not assign any particular weight to Plaintiff's treating physicians who did not assign an RFC. It is unclear if he considered such reports in his determination. For instance, Plaintiff twice saw Dr. Stogicza whose findings mostly support Plaintiff's other treating and examining physicians (including a diagnosis of nerve entrapment), yet the ALJ described these visits without explaining if or how they affected his findings.

Next, the ALJ emphasized that most the medical reports in the record should be given little weight because the "evaluations were conducted for the purpose of determining the claimant's eligibility for state assistance." (Tr. 30). This too constitutes an error of law. Considerations of "the purpose for which medical reports are obtained do[] not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832. Again, the ALJ was not concerned that ME Haynes, Dr. Staley, and Dr. Chau's reports and testimony were all provided for the basis of determining the Plaintiff's eligibility for benefits as well.

The ALJ also gave limited or no weight to many of the medical opinions in the record because they "were completed by checking boxes and contain[ed] few objective findings in support of the degree of limitation opined." (Tr. 30.) While a

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

check-box report may be given reduced weight if it does not contain any explanation or bases for its conclusions, check-box reports based on a physician's experience with the patient and supported by numerous records are entitled to substantial weight. *Compare Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) *with Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). In this case, Dr. Thibert is one treating physician whose reports the ALJ gave "little weight." (Tr. 27.) Dr. Thibert treated Plaintiff on many occasions and provided substantial objective medical findings in addition to the check-box DSHS form which he filled out. *See e.g.* (Tr. 221-251; 256-276). Paradoxically, after summarizing Dr. Thibert's exhaustive findings, the ALJ dismissed Dr. Thibert's determination of a sedentary RFC due to "lack of objective findings." (Tr. 27.) Plaintiff properly observes that the ALJ gave little weight to the DSHS evaluations because of their check-box format but assigned great weight to Dr. Chau's evaluation which also included a similar check-box portion, (Tr. 442-447.), and to Dr. Staley's report which incorporated a check-box report by Keith Perron. (Tr. 309.)

      In sum, ALJ Duncan improperly gave too little weight to the opinions and reports of Plaintiff's treating and examining physicians while inflating the importance of Dr. Staley's and Dr. Haynes' opinions. This misapplication constitutes error of law. This matter must be remanded for a reassessment of Plaintiff's RFC after a proper balancing of the medical evidence in the record.

      **2.    ALJ's reliance on mistakes by the vocational expert and selection of data-entry clerk at Step Five**

      Plaintiff argues, and the Commissioner concedes, that the ALJ erred by relying on VE Duncan's mistake in including the job of Data Entry Clerk in his assessment of Plaintiff's abilities. This Court finds that this error was harmless and does not itself justify a reversal because the ALJ included two other potential occupations at Step Five. (Tr. 32.)

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

### 3. The ALJ's hypothetical posed to the Vocational Expert

Plaintiff argues that the ALJ committed harmful reversible error by posing a hypothetical that did not take into account his limitations. This Court finds that the ALJ improperly weighed medical evidence which possibly resulted in an incorrect RFC assessment. The hypothetical the ALJ presented to the vocational expert relied on an RFC of light work, which in turn relied on the ALJ's incorrect balancing of the medical record. (Tr. 90.) Therefore, the vocational expert's suggested occupations the Plaintiff could perform may not correspond with Plaintiff's actual capabilities after a proper weighing of the medical evidence.

### 4. ALJ's determination that Plaintiff lacked credibility

Plaintiff states—though fails to argue—the ALJ erred in not finding Plaintiff's testimony as credible because "his medical providers and the evidence support his claim." The ALJ implied—and the Commissioner explicitly argues—that Plaintiff's lack of credibility is due to a "drug-seeking" nature. This, however, does not accord with the record. Plaintiff has been prescribed various opioids for pain management and, at one point, was described as being "not very good with pain meds" and occasionally would run out early. (Tr. 234.) Plaintiff, however, began reporting to his doctors as early as 2010 that he did not like "pills," (Tr. 228.), and that strong pain medication was too sedating. (Tr. 312.) In fact, Plaintiff reported to doctors that methadone did not help his pain, (Tr. 247.), and that Advil helped more than Percocet. (Tr. 239.) These statements are inconsistent with drug-seeking. Plaintiff similarly testified at his disability hearing stating, "I don't like painkillers" explaining that pain medication made him nauseous and incoherent. (Tr. 46, 63-64.) Plaintiff began using medical marijuana as an alternative. (Tr. 68.) Although the ALJ and the Commissioner seem concerned with Plaintiff's medical marijuana usage, it is not the kind of action that justifies finding Plaintiff's testimony not credible. *Cf. Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ finding that claimant exaggerated his complaints of physical pain in

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

order to "feed his Valium addiction" rendered his complaints not credible was justified).

Ultimately, Plaintiff waived this argument because he failed to cite any authority to support this claim and did not present any developed legal argument. A "bare assertion does not preserve a claim" especially when several other claims are presented. *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994).

**5.    Lack of evidence from a neurological specialist**

Plaintiff argues the ALJ committed reversible error by rendering a decision without considering evidence from a neurologist. At least three treating doctors suggested Plaintiff see a neurologist to explore the causes of numbness and tingling in his extremities. Additionally, the medical examiner described these symptoms as a "loose end" that necessitated an evaluation by a neurological specialist. (Tr. 52.) At his hearing, Plaintiff testified that use of his hands and fingers is limited to no more than twenty minutes at a time before his fingers go numb. (Tr. 72.) The vocational expert believed there were "no jobs that a person can do . . . in a sedentary position that requires less than occasional use of the hands." (Tr. 98.) The record indicates the need for an exam by a neurologist, and the ALJ ordered such an exam. (Tr. 101.) No evidence of a neurological exam is present in the record and there is no explanation for its absence. Dr. Chau's evaluation stated Plaintiff was "without focal neurological deficit" but Dr. Chau's evaluation was not a targeted neurological exam. (Tr. 441.) Additionally, the ALJ did not present Dr. Chau's evaluation as evidence contradicting or overwhelming Plaintiff's testimony and other medical evaluations that indicated the presence of nerve entrapment or neurological deficits. Considering the substantial evidence suggesting that Plaintiff has neurological limitations, the ALJ's failure to properly address this potential disability constitutes legal error.

//

//

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

## VIII. Conclusion

The ALJ committed reversible error by improperly weighing the medical evidence. The ALJ assigned little to no weight to treating and examining doctors while according too much weight to non-examining doctor's opinions. Accordingly, the ALJ's finding that Plaintiff is not disabled under the Social Security Act is not supported by substantial evidence in the record. Plaintiff requests a reversal and immediate award of benefits. Although it is possible that Plaintiff will properly be assigned an RFC of sedentary, the extent of his working limitations, and what jobs may be available to him are not properly known by this Court. Therefore, remand is proper. After the ALJ properly considers evidence from Plaintiff's treating and examining doctors, considers the possibility of nerve entrapment and associated tingling or numbness in the upper extremities, and determines a proper residual functional capacity, the ALJ shall again consult with a vocational expert to determine if Plaintiff is disabled as defined by the Act.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 23, is **DENIED**.

3. The decision of the Commissioner denying benefits is **reversed** and **remanded** to the agency for further proceedings consistent with this Order.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 14th day of November, 2014.

*/s/ Stanley A. Bastian*
Stanley A. Bastian
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16